Worley v. Moore, 2018 NCBC 113.

STATE OF NORTH CAROLINA
COUNTY OF COLUMBUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1316

DENNIS WORLEY; STERLING
KOONCE; FLYING A LIMITED
PARTNERSHIP L.P.; JOSEPH W.
FORBES, JR.; KENNETH CLARK;
JAMES BOGGESS; JOEL WEBB;
JAIMIE LIVINGSTON; JAMES E.
BENNETT, JR.; DAVID MINER;
RONALD ENGLISH; and MDF, LLC,

Plaintiffs,

v.

ROY J. MOORE; PIERCE J.
ROBERTS; DAVID BROWN;
MICHAEL ADAMS; CHRISTOPHER
BAKER; JAMES KERR; FRANK
MCCAMANT; NEIL KELLEN; GINI
COYLE; JOSEPH MOWERY;
TOSHIBA CORPORATION; ALAMO
ACQUISITION CORP.; and
STEPHENS, INC.,

Defendants.

**ORDER AND OPINION ON
DEFENDANT TOSHIBA
CORPORATION'S MOTION TO
DISMISS**

THIS MATTER comes before the Court on Defendant Toshiba Corporation's ("Toshiba") Motion to Dismiss Pursuant to Rule 12(b)(6). ("Motion", ECF No. 124.) Toshiba moves to dismiss all of the six claims asserted against it in the Second Amended Complaint ("SAC"). (Sec. Am. Compl., ECF No. 123.)[1]

THE COURT, having considered the Motion, the briefs filed in support of and in opposition to the Motion, the arguments of counsel at the hearing, and other

---

[1] The SAC raises claims only against Michael Adams and Toshiba.

appropriate matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, in the manner and for the reasons set forth below.

> *Nexsen Pruet, PLLC, by R. Daniel Boyce for Plaintiffs.*
>
> *RuyakCherian LLP, by Robert F. Ruyak, Richard A. Ripley (pro hac vice), and Arthur T. Farrell for Plaintiffs.*
>
> *Kilpatrick Townsend & Stockton LLP, by Jason M. Wenker, John M. Moye, Elizabeth L Winters, Joel D. Bush (pro hac vice) and Stephen E. Hudson (pro hac vice) for Defendants Michael Adams and Toshiba Corporation.*

McGuire, Judge.

## I.    RELEVANT PROCEDURAL FACTS

1.     On February 28, 2017, this Court entered its Opinion and Order on Defendants' Motions to Dismiss (the "First Dismissal Order"). *Worley v. Moore,* 2017 NCBC LEXIS 15 (N.C. Super. Ct. Feb. 28, 2017).  (ECF No. 99.)  In the First Dismissal Order, the Court dismissed all of the Defendants except for Michael Adams ("Adams") Gini Coyle, and Toshiba based on the allegations in the First Amended Complaint ("FAC").  (First Am. Compl., ECF No. 18.)  *Worley*, 2017 NCBC LEXIS 15, at *79–80.

2.     On April 18, 2018, Plaintiffs filed the SAC.  The factual allegations in the SAC are virtually identical to the allegations in the FAC, but the SAC makes claims only against Adams and Toshiba.  In the SAC, Plaintiffs allege claims against Toshiba for common law fraud (Count II), conspiracy to defraud (Count IV), fraudulent inducement (Count V), violation of the North Carolina Securities Act ("NCSA") (Count VI), unlawful taking, conversion, and unjust enrichment (Count

VII), and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") (Count VIII).

3. On May 21, 2018, Toshiba filed the Motion to Dismiss and accompanying brief in support. (Br. Supp. Toshiba MTD, ECF No. 125.) Plaintiffs filed their brief in opposition on June 11, 2018. (Pls.' Br. Opp. Def. MTD, ECF No. 127.) Toshiba filed a reply on June 25, 2018. (ECF No. 128.) The Court held a hearing on the Motion. Plaintiffs subsequently sought leave to file additional legal authority responding to questions raised by the Court at the hearing, and the Court granted leave. (Mot. for Leave, ECF No. 139; Order, ECF No. 143.) The Motion it is now ripe for disposition.

## II. FACTS AND PROCEDURAL BACKGROUND

4. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ( "Rule(s)"), but only recites those facts included in the complaint that are relevant to the Court's determination of the Motion. *See e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The full factual background underlying Plaintiffs' claims is set out in the First Dismissal Motion. *Worley*, 2017 NCBC LEXIS 15, at *2–18. The Court recites here only those facts necessary to the disposition of the Motion.

5. Plaintiffs are former holders of the common stock of Consert, Inc. ("Consert"). (ECF No. 123, at ¶¶ 3–14.)

6. Defendant Toshiba is a Japanese corporation. (*Id*. at ¶ 16.)

7.    Defendant Adams is a former director of Consert.  (*Id*. at ¶ 17.) (Collectively, Toshiba and Adams are referred to as "Defendants").

8.    Roy J. Moore ("Moore"), Pierce J. Roberts ("Roberts"), David Brown, Christopher Baker, James Kerr, Frank McCamant, and Neil Kellen, are former officers and/or directors of Consert (collectively, "Former Directors").  (*Id*. at ¶¶ 18–25.)  The Former Directors are alleged to be "co-conspirators" in the unlawful acts alleged in the SAC.  (*Id*.)

9.    Alamo Acquisition Corp. ("Alamo") was a wholly-owned subsidiary of Toshiba.  Alamo is alleged to be a "co-conspirator" in the unlawful acts alleged in the SAC. (*Id*. at ¶ 27.)

10.    Stephens, Inc. ("Stephens Bank") was retained and employed as an investment bank by Consert, and Joseph S. Mowery ("Mowery") was a Managing Director of Stephens Bank. (*Id*. at ¶¶ 29–30.) Stephens Bank and Mowery are alleged to be "co-conspirators" in the unlawful acts alleged in the SAC (collectively, the Alamo, Stephens Bank, and Mowery are referred to as "co-conspirators").  (*Id*.)

11.    On January 24, 2013, following negotiations between Consert's board of directors and Toshiba, Consert and Toshiba entered into an Agreement and Plan of Merger ("Merger Agreement") under which Toshiba acquired all of the stock of Consert and then merged Consert into Alamo.  The Merger closed on February 5, 2013 ("the Merger").  (*Id*. at ¶ 36.)

12.    In the SAC, Plaintiffs allege that Defendants and co-conspirators

orchestrated the timing of, the negotiations related to, the
terms and conditions of, and the actual sale of Consert to

> Toshiba in a manner and under circumstances that maximized the monetary benefits of the sale to themselves and which disregarded, compromised, and ultimately precluded[ ] monetary returns to Plaintiffs on their investments as shareholders in Consert.

(ECF No. 123, at ¶ 38.) The Former Directors allegedly maximized the monetary benefits from the Merger to themselves by:

> substantially increas[ing] and accru[ing] their salaries, bonuses, special 'change of control payments' and other compensation in order to create preferential payments to themselves from the sale proceeds; ma[king] personal loans to Consert on usurious and egregious terms in order to create preferential interest and principal payments to themselves from the sale proceeds; and limit[ing] the negotiations and sale of Consert to a buyer (Defendant Toshiba) who agreed to permit the [Former Directors] to make all of these preferential payments to themselves from the sales proceeds.

(*Id.* at ¶ 48.)

13. On the other hand, the Merger Agreement provided for payment to holders of Consert's common stock (the "common shareholders"), including Plaintiffs, solely from two post-Merger "earn out" events. The first earn out was based on the performance of a contract between Toshiba and CPS Energy Corporation ("CPS"), to be executed post-Merger. (the "Toshiba/CPS Contract"). (*Id.* at ¶ 123.) The second earn out was based on the settlement of a lawsuit in which Consert was a party at the time of the Merger (the "Itron Lawsuit"). (*Id.* at ¶ 125.) The common shareholders would receive payments based on revenue generated by Toshiba under the Toshiba/CPS Contract, and would receive payments from a portion of the amount paid to Toshiba in settlement of the Itron Lawsuit. (ECF No. 123, at ¶¶ 123–25.) The

estimated total payments to common shareholders from these two events was $60–70 million. (*Id.* at ¶ 126.)

14. The earn outs, however, were contingent on an all-or-nothing "trigger." (*Id.* at ¶ 127.) Toshiba would only be required to make the earn out payments to the common shareholders if the Toshiba/CPS Contract (a) contained "a firm commitment for the purchase of smart-grid hardware, software and/or services in a minimum aggregate value of $100 million over a period of five years," and (b) if the Toshiba/CPS Contract was fully executed within one year of the Merger's closing, or by February 4, 2014. (*Id.* at ¶ 128; Toshiba Mot. to Dis. Ex. 1, ECF No. 124.1, at p. 5 ("Merger Information Statement").)

15. Plaintiffs allege that Defendants and the co-conspirators knew that CPS would not enter into a "firm commitment" for the minimum contract of $100 million, and that the trigger was "illusory and a sham" that would never be achieved. (ECF No. 123, at ¶ 127.) Defendants and the co-conspirators misrepresented to, and concealed from, the common shareholders that they likely would not receive the earn out payments when presenting the Merger plan to the shareholders for review and approval. (*Id.* at ¶¶ 133, 136, 146–47, 153.)

16. On January 25, 2013, Consert held a shareholders meeting at which it announced the Merger Agreement to Consert's shareholders ("Shareholders Meeting"). (*Id.* at 88.) Plaintiffs allege that during the Shareholders Meeting, Moore and Mowery made misrepresentations to common shareholders, and that Consert withheld information material to the Merger. (Id. at ¶¶ 90–98.) Moore stated that

the earn out payments were "most likely to occur" and "absolutely achievable." (*Id*. at ¶ 92.) Moore also expressed the opinion that the Merger was "in the best interest of all shareholders." (*Id*. at ¶ 93.)

17.   On January 28, 2013, Consert sent to its shareholders a "Merger Information Statement" and "Shareholder Consent." (*Id*. at ¶ 99; Merger Info. Stat. and Shareholder Consent, ECF No. 124.1.)   Plaintiffs allege that the Merger Information Statement contained misrepresentations and omissions of material facts regarding the Merger. (*Id*. at ¶¶ 101–02, 105–19.) However, the Merger Information Statement stated that the earn out payments were "contingent" and "uncertain." (ECF No. 124.1, at pp. WOR_7895–WOR_7897.)

18.   Each of the Plaintiffs signed and returned the Shareholder Consent form consenting to the merger and surrendering their shares of common stock. (ECF No. 123, at ¶ 119; ECF No. 124.1, at p. WOR_7899.)  The Merger closed on February 5, 2013.

19.   Plaintiffs do not allege that Toshiba had any direct communications or dealings with Plaintiffs during the negotiation of the Merger Agreement or prior to the closing of the Merger.  Instead, Plaintiffs claim that Toshiba was "fully aware" of the Former Directors' self-dealing, knew of "misleading statements" and "material omissions" in the Former Directors' communications with Plaintiffs, and that Toshiba "did nothing to stop the fraudulent communications." (ECF No. 123, at ¶¶ 44–45.) Despite knowing that the co-conspirators had misrepresented the details of the Merger to, or concealed information from, the common stockholders, Toshiba is

alleged to have done "nothing to stop such fraudulent communications." (ECF No. 123, at ¶ 45.) Plaintiffs further allege that

> Toshiba fraudulently, with the intent to deceive, signed the Merger Agreement which contained untrue and misleading statements of material fact, failed to disclose, and intentionally omitted necessary material facts, on all of which facts Defendants intended for Plaintiffs to rely in determining whether they should consent to the sale of and redemption of their stock in Consert. By so doing, [ ] Toshiba fully participated in the conspiracy and scheme to defraud Plaintiffs in collusion with the other Defendants[.]

(*Id.* at ¶ 147.)

20.     The Merger resulted in Toshiba paying $30 million in cash consideration as follows: $2.2 million was paid to the Former Directors, including Adams, and other Consert executives in the form of "change of control" and bonus payments; $2 million was paid to Consert's advisors, including Stephens Bank and Mowery; $14 million was used to repay Consert's obligations and loans, including substantial amounts to Roberts and Moore and to certain strategic investors who were represented on Consert's board by other Former Directors, for "bridge loans" made by them to Consert; and approximately $9.8 million was paid to holders of Consert Series A and Series B Preferred stock, including substantial amounts to the Former Directors and the companies they represented on the board. (*Id.* at ¶ 121.)

21.     The trigger event for payments to Plaintiffs from the earn outs contained in the Merger Agreement did not occur, and Plaintiffs ultimately did not receive any compensation in exchange for their shares of common stock. Instead, "Toshiba executed an agreement with CPS with a value of less than the required $100 million,

thereby avoiding the trigger requirements and eliminating any earn out to Plaintiffs." (*Id*. at ¶ 148.) Plaintiffs allege that the contract Toshiba entered into with CPS has generated substantial revenues, but no earn out payments have been made because the trigger was not achieved. (Id. at ¶ 149.)

22. In February, 2015, the Itron Litigation was settled and for "multiple millions of dollars." (*Id*. at ¶ 150.) No earn out payments were made from the settlement proceeds because the trigger was not achieved.

## III. LEGAL STANDARD

23. The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp*., 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (citations and emphasis omitted). Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). Otherwise, "a complaint should not be dismissed for

insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 (emphasis omitted). The Court construes the complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

## IV. ANALYSIS

### A. Count II: Common Law Fraud and Count V: Fraudulent Inducement

24. Plaintiffs make claims against Toshiba for fraud and fraudulent inducement. (ECF No. 123, at ¶¶ 162–67; 181–85.) Defendants move to dismiss these claims on the grounds that, *inter alia*, Plaintiffs do not allege that Toshiba had any communications with or made any misrepresentations directly to Plaintiffs, Toshiba was under no legal duty to disclose information to Plaintiffs, and Plaintiffs could not reasonably have relied on any representations that the triggers for the earn outs would be achieved. (ECF No. 125, at pp. 10–14.)

25. The essential elements of fraud or fraudulent inducement are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981); *see also Ward v. Fogel*, 237 N.C. App. 570, 581, 768 S.E.2d 292, 301 (2014).

Additionally, the deceived party must reasonably have relied on the allegedly false representations. *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007).

26. Plaintiffs have not alleged that Toshiba made affirmative misrepresentations to Plaintiffs. Instead, Plaintiffs apparently contend that Toshiba is somehow responsible for misrepresentations that were made to Plaintiffs by other co-conspirators because Toshiba knew that misrepresentations were being made but did nothing to stop them. Plaintiffs have not pointed the Court to any basis in law upon which Toshiba could be responsible for statements made to Plaintiffs by the Former Directors or any other co-conspirator.

27. If a claim of fraud is based on concealment of a material fact, the plaintiff must also allege that the party allegedly committing the fraud had a duty to speak. *E.g., Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)("[I]t is well settled that *where there is a duty to speak* the concealment of a material fact is equivalent to fraudulent representation" (emphasis added).); *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) ("Where the claim arises by concealment or nondisclosure, [p]laintiffs also must allege that all or some of the [d]efendants had a duty to disclose material information to them, as silence is fraudulent only when there is a duty to speak.").

28. Plaintiffs have not pleaded facts that would support an allegation that Toshiba had an obligation to disclose directly to Plaintiffs, nor provided any legal authority that would support a duty to disclose by Toshiba to Plaintiffs under the

circumstances present in this case. Again, Toshiba did not negotiate the terms of the Merger Agreement with Plaintiffs directly, and did not have direct communications with Plaintiffs.[2]

29.     Finally, the facts pleaded in the SAC do not support, and, in fact undercut, the allegation that Plaintiffs could reasonably have relied on any misrepresentations or omissions regarding the likelihood of achieving the earn out triggers. First, Plaintiffs have not alleged that the Merger Agreement required Toshiba to enter into the Toshiba/CPS Contract. To the contrary, they allege that the Merger Agreement gave Toshiba "total and exclusive control over both the execution and value of the [Toshiba/CPS Contract]" and "the unbridled right[ ] to conclude a contract with CPS in an amount less than $100 million, or delay the execution of an agreement until after February 4, 2014, to completely avoid paying any earn out to" the common shareholders. (ECF No. 123, at ¶¶ 143, 145.)

30.     In addition, "[r]eliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Sullivan v. Mebane Packaging Group, Inc.*, 158 N.C. App. 19, 26, 581 S.E.2d 452, 458 (2003). Here, Plaintiffs allege that they were provided with the Merger Information Statement along with the Shareholder Consent forms seeking surrender of the stock and approval of the Merger. The Merger Information Statement clearly stated that the earn out payments were not guaranteed, but instead were "contingent" and "uncertain." (ECF No. 124.1, at pp. WOR_7895–

---

[2] As discussed below at paragraphs 40–41, an acquiring company generally has no duty to disclose information to the acquired company's shareholders.

WOR_7897.) The Merger Information Statement also provided information about the time frames for payment of the earn outs, but qualified that information by stating that the specified timeline would apply only "if any" payments were made at all. (*Id.* at p. WOR_7901.) The use of this type of language in the Merger Information Statement should have placed Plaintiffs on notice that they could not rely on statements by Former Directors or other co-conspirators regarding the likelihood of receiving earn out payments. *See Sullivan*, 158 N.C. App. at 27, 581 S.E.2d at 459 (affirming summary judgment for defendants on plaintiff-shareholder's claim for fraud arising from alleged misrepresentations and omissions by defendants in sale of stock by plaintiff where plaintiff was provided with documents summarizing plaintiff's pertinent rights); *Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *40 (N.C. Super. Ct. Feb. 27, 2015) (dismissing fraud claim and holding that plaintiffs' reliance was unreasonable where "the information disclosed in the [private placement memo][,] . . . which [p]laintiffs received after the alleged misconduct and before they made their investments, plainly contradicted the alleged misrepresentations and omissions about which [p]laintiffs complain").

31.     Plaintiffs have not alleged that Toshiba made any affirmative misrepresentations to Plaintiffs, nor pleaded facts that would establish a legal duty on Toshiba to disclose information to Plaintiffs relating to the Merger. In addition, the allegations in the SAC and the information provided in the Merger Information Statement establish that Plaintiffs could not reasonably have relied on any representations or omissions regarding whether the trigger event necessary for the

earn out payments would be achieved. Toshiba's motion to dismiss Plaintiffs' claims for common law fraud and fraudulent inducement should be GRANTED, and the claims DISMISSED.

B. Count IV: Conspiracy to Defraud

32. Plaintiffs make a claim for conspiracy to defraud against Toshiba. (ECF No. 123, at ¶¶ 174–80.) Plaintiffs allege that Toshiba "agreed, colluded and conspired with" Adams and the co-conspirators, "and intentionally performed one or more actions in furtherance of an illegal scheme to defraud Plaintiffs[.]" (*Id.* at ¶ 175.) "Specifically," Plaintiffs allege, Toshiba "saw, approved and did nothing to stop the distribution of Shareholder Consent Documents that were misleading and contained material omissions . . . . [which] were sent with the express purpose of misleading Plaintiffs in order to get them to agree" to the Merger. (*Id.* at ¶¶ 176–77.)

33. "A claim for damages resulting from a conspiracy to defraud exists where there is an agreement between two or more persons to defraud a party, and as a result of acts done in furtherance of, and pursuant to the agreement, that party is damaged." *Johnson v. First Union Corp.*, 128 N.C. App. 450, 459, 496 S.E.2d 1, 8 (1998) (citing *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987)). "A claim for conspiracy to defraud cannot succeed without a successful underlying claim for fraud." *Jay Group, Ltd. v. Glasgow*, 139 N.C. App 595, 599, 534 S.E.2d 233, 236 (2000); *see also, Sellers v. Morton*, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008) ("Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to

carry out the conduct and injury resulting from that agreement.") (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002); and citing *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783 (1951)).

34. There is no underlying claim for fraud left standing in this case. The Court has dismissed the claims for fraud against Toshiba in this order. The Court previously dismissed the claims for fraud against all of the present and former Defendant-conspirators. *Worley*, 2017 NCBC LEXIS 15, at *79–80. Since there is no viable claim for fraud against any present or former party to this action, the claim for conspiracy to defraud also must fail. *See Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F. Supp. 2d 635, 645, (W.D.N.C. Dec. 16, 2008) (dismissing the civil conspiracy claim where the two other claims upon which plaintiff relied were dismissed).

35. Therefore, Toshiba's motion to dismiss Plaintiffs' claim for conspiracy to defraud should be GRANTED, and the claim DISMISSED.

C. Count VI: Violation of the North Carolina Securities Act

36. Plaintiffs claim that Toshiba violated sections 78A-56(b) and 78A-8 of the NCSA. (ECF No. 123, at ¶¶ 186–91.) Section 78A-56(b) provides a cause of action to

> [a]ny person who purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the seller not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise

of reasonable care could not have known, of the untruth or omission[.]

G.S. § 78A-56(b).

37. Pursuant to G. S. § 78A-8:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud,

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or,

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

38. Plaintiffs allege that Toshiba purchased the Consert stock "(i) with knowledge that the material facts disclosed to Plaintiffs in the Merger Agreement were untrue and/or misleading, (ii) knowingly omitting and failing to disclose facts material to Plaintiffs' shareholder consent, which made the statements in the Merger agreement (*sic*) misleading in the circumstances under which they were made, and (iii) employing an act, practice, course of business, and scheme to defraud and deceive Plaintiffs." (ECF No. 123, at ¶ 188.)

39. The Court has already concluded that Plaintiffs have not sufficiently alleged that Toshiba made any statements to Plaintiffs in connection with the Merger, let alone statements that could constitute misrepresentations, or statements from which Toshiba made misleading omissions. Since Plaintiffs have not alleged

statements by Toshiba, Toshiba cannot be liable to Plaintiffs pursuant to G.S. §§ 78A-56(b) and 78A-8(2).

40. Furthermore, there was no duty on Toshiba, as a purchaser of securities, to disclose anything to Plaintiffs in relation to the Merger. "[A] purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary has been held to have no obligation to reveal material facts." *Chiarella v. United States*, 445 U.S. 222, 229, 100 S. Ct. 1108, 1115 (1980). This Court has previously held that the NCSA does not impose a general "duty to speak" on sellers or purchasers of stock. *NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, at *29–30 (N.C. Super. Ct. Feb. 14, 2013). Courts in other jurisdictions also "have uniformly declined to find a duty to disclose running from one party in an arm's-length securities transaction to the shareholders of the counterparty to the transaction, absent some fiduciary or other special relationship between them." *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1343 (2010) (citing numerous cases from the 5th, 8th, and 7th Circuits, and from Delaware, Pennsylvania, and New York holding the same). Plaintiffs have not alleged that Toshiba had a fiduciary or any other relationship with them that imposed a duty to disclose on Toshiba.

41. Furthermore, to the extent Plaintiffs allege and argue that Toshiba had a duty to disclose arising from its knowledge that the Merger Information Statement and other communications made to Plaintiffs by the alleged co-conspirators were misleading or omitted material facts, Plaintiffs have cited no authority to support

such argument, and the Court finds it unpersuasive. *Id.* at 1342 (finding that the trial court's jury instruction imposing on the acquiring company a duty to disclose information to the acquired company's shareholders because it "knew or was severely reckless as to whether material information had not been fully disclosed to the shareholders or that the disclosures made . . . were materially misleading" was "clear error").

42. Plaintiffs have not alleged that Toshiba made statements to Plaintiffs that could give rise to a violation of the NCSA, nor have Plaintiffs alleged that Toshiba had any duty to disclose information to Plaintiffs. Accordingly, Toshiba's motion to dismiss Plaintiffs' claims for violation of the NCSA should be GRANTED.

D. Count VII: Unlawful Taking and Conversion

43. Plaintiffs make claims against Toshiba for conversion, "unlawful taking," and unjust enrichment. (ECF No. 123, at ¶¶ 192–201.) Plaintiffs seek "restitution from [ ] Toshiba for the full value of all benefits and gains obtained by [ ] Toshiba resulting from the transfer of Plaintiffs' ownership interests in Consert stock to [ ] Toshiba." (*Id.* at ¶ 197.)

i. *Conversion and unlawful taking*

44. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (internal citation and quotation marks omitted). "There are, in effect, two

essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310–11, 603 S.E.2d 147, 165 (2004) (citation and quotation marks omitted).

45.     While Plaintiffs allege in conclusory fashion that "[t]he transfer of Plaintiffs' stock interests to Defendant Toshiba was an unlawful taking and conversion," (ECF No. 123, at ¶ 194), the facts pleaded in the SAC defeat the allegation.  Plaintiffs allege that they each signed the Shareholder Consent that surrendered their stock in Consert pursuant to the Merger Agreement with Toshiba "in exchange for the consideration which the undersigned is entitled in respect to the . . . Merger Agreement." (ECF No. 123, at ¶ 119; ECF No. 124.1, at p. WOR_7942.) Therefore, the allegations establish that Toshiba did not take wrongful or unauthorized possession of Plaintiffs' stock, but rather that Plaintiffs consented to the transfers of the stock.

46.     Plaintiffs argue that the transfers of their stock was not with their consent because Toshiba fraudulently induced the transfers.  (ECF No. 127, at pp. 17–18.)    The Court, however, has dismissed Plaintiffs' claim for fraudulent inducement, and the allegations of fraud cannot support the contention that Toshiba took unauthorized possession of Plaintiffs' stock.

47.    Finally, since Toshiba rightfully came into possession of Plaintiffs' stock interests, Plaintiffs were required to allege that they made demand for return of those interests and that Toshiba refused the demand. *White*, 166 N.C. App. at 310–11, 603 S.E.2d at 165; *Stratton v. Royal Bank of Can.*, 2010 NCBC LEXIS 1, *20–21 (N.C. Super. Ct. Feb. 5, 2010) ("If there is no wrongful taking, i.e., if the defendant rightfully comes into possession and then refuses to surrender the goods, then demand and refusal is necessary for the tort of conversion to exist."). Plaintiffs have not alleged that they demanded return of the stock interests nor that Toshiba refused such demand.

48.    In conclusion, Toshiba's motion to dismiss Plaintiffs' claim for conversion should be GRANTED, and the claim DISMISSED.

   *ii.   Unjust enrichment*

49.    Plaintiffs make a claim for unjust enrichment, alleging that Toshiba "unjustly enriched itself by inducing Plaintiffs to transfer all of their ownership interests in Consert stock to Defendant Toshiba without just and adequate compensation to Plaintiffs." (ECF No. 123, at ¶ 193.) Toshiba makes very limited argument in support of dismissal of the unjust enrichment claim, essentially contending unjust enrichment should fail because Plaintiffs have an adequate remedy at law. (ECF No. 128, at pp. 13–14.)

50.    "A claim of unjust enrichment is an alternative to a claim based on breach of contract whereby, upon the absence of an actual agreement between the parties, the court implies that a 'quasi-contract' existed and permits a plaintiff to

bring an action in restitution to recover the amount of the benefit conferred on the defendant." *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 411–12 (2003) (citing *Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002)); *see also Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 4, at *15 (N.C. Super. Ct. Jan. 12, 2017) ("A claim for unjust enrichment is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law" (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556) (internal quotation marks omitted).). "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atlantic C. L. R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96, 150 S.E.2d 70, 73 (1966). "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984).

51. In North Carolina, to recover on a claim of unjust enrichment, a plaintiff must prove that: (1) it conferred a benefit on another party; (2) the other party consciously accepted the benefit; and (3) the benefit was not conferred gratuitously or by an interference in the affairs of the other party. *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002).

52. Plaintiffs contend that they conferred a benefit on Toshiba by surrendering their common stock and consenting to the Merger. Plaintiffs allege that Toshiba needed Plaintiffs' consent because "one of the conditions to closing in the [Merger Agreement] was a requirement that less than 35% of Consert shareholders exercise their Dissenters' Rights under Delaware law." (ECF No. 123, at ¶ 105.) Plaintiffs' surrender of their stock and consents were not gratuitous, but rather were provided in exchange for the opportunity to participate in the earn out payments from Toshiba.

53. Plaintiffs further allege that Toshiba consciously accepted the benefit of Plaintiffs' consent knowing "that it would take no action which might trigger the Earn-out provisions of the Merger Agreement or take any other action which would require Toshiba to pay any earn-out" to Plaintiffs. (*Id*. at ¶ 146.) Further, "Toshiba had no incentive to execute [the Toshiba/CPS Contract] . . . because, in so doing, it would have been required to potentially pay over $60 million as an earn out to" Plaintiffs and other common stockholders. (*Id*. at ¶ 145.) Plaintiffs allege that as a result of their consents, Toshiba has retained the revenues from the work it has performed for CPS and from the settlement of the Itron lawsuit without having to share any of it with Plaintiffs, and that despite paying only $30 million for Consert, "Toshiba has, to date, received revenues resulting from its acquisition of Consert of approximately $200 million," while Plaintiffs have received nothing for their common stock. (*Id*. at ¶¶ 148–54.)

54.     The Court finds that Plaintiffs have alleged facts sufficient to support a claim for unjust enrichment, and to survive a motion to dismiss. The allegations suggest that Toshiba received the benefit of Plaintiffs' consent to the Merger "under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins*, 68 N.C. App. at 591, 315 S.E.2d at 761. Therefore Toshiba's motion to dismiss Plaintiffs' claim for unjust enrichment should be DENIED.

E. Count VIII: Violation of the North Carolina Unfair and Deceptive Trade Practices Act

55.     As Plaintiffs' final claim, they allege that Toshiba engaged in unfair or deceptive trade practices in violation of the UDTPA. (ECF No. 123, at ¶¶ 202–06.) Plaintiffs allege that during "the time leading up to the [M]erger," Toshiba made "numerous misrepresentations" and withheld information. (*Id.* at ¶ 203.) Plaintiff claims that Toshiba's conduct was "deceptive and in violation of the law." (*Id.*)

56.     "To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 303, 603 S.E.2d 147, 161 (2004). Plaintiffs argue that their UDTPA claim is based on their claims for fraud. (ECF No. 127, at p. 15.)

57.     Since the Court has dismissed Plaintiffs' claims for fraud, the claim for violation of the UDTPA also should be dismissed. *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 89, 557 S.E.2d 176, 182 (2001) (The essence of plaintiff's [UDTPA]

claim is that defendant committed fraud . . . . Having determined that plaintiff has failed to make a prima facie case with respect to [the fraud claim], we likewise conclude plaintiff has not established a claim for unfair and deceptive business practices."); *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 375, 555 S.E.2d 634, 642 (2001) ("[P]laintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its claims for misappropriation of trade secrets, tortious interference with contracts and civil conspiracy. Having determined that the trial court properly granted summary judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists.").

58. Therefore, Toshiba's motion to dismiss Plaintiffs' claim for unfair and deceptive trade practices should be GRANTED, and the claim DISMISSED.

## V.    CONCLUSION

In conclusion, the Motion is GRANTED, in part, and DENIED, in part, as follows:

1. Toshiba's motion to dismiss Plaintiffs' claim for unjust enrichment is DENIED.

2. Except as specifically denied herein, Toshiba's motion to dismiss the remainder of Plaintiffs' claims is GRANTED.

SO ORDERED, this, the 2nd day of November, 2018.

  /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases