Rabinowitz v. Suvillaga, 2019 NCBC 7.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| NEW HANOVER COUNTY | 17 CVS 244 |
| CHARLES RABINOWITZ, | |
| Plaintiff, | |
| v. | **ORDER AND OPINION ON** |
| | **PLAINTIFF'S MOTION TO DISMISS** |
| IRMA ROSALES SUVILLAGA, | |
| Defendant. | |

1.     **THIS MATTER** is before the Court on Plaintiff Charles Rabinowitz's ("Plaintiff") Motion to Dismiss (the "Motion") filed on September 24, 2018. (ECF No. 52 ["Mot."].)  The Motion seeks to dismiss with prejudice the counterclaims asserted against Plaintiff by Defendant Irma Rosales Suvillaga ("Defendant") pursuant to Rule 12(b)(6) and to dismiss Defendant's Amended Affirmative Defenses, Answer and Counterclaims in its entirety pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure ("Rule(s)").[1]   Having considered the Motion, the briefs, and the arguments of counsel at a hearing on the Motion, the Court **GRANTS in part** and **DENIES in part** the Motion.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Ryan C. Fairchild, Thomas G. Varnum, and Edwin L. West, for Plaintiff.*

> *The Lea/Schultz Law Firm, P.C., by James W. Lea, III, for Defendant.*

---

[1] Defendant petitions for partition in this amended pleading. (*See* Am. Affirm. Defs., Answer & Countercl. ¶¶ 54−61, ECF No. 47 ["Affirm. Defs. & Answer"/"Countercl."].)  However, the parties agreed at the October 30, 2018 hearing on the Motion that the petition for partition is a separate and distinct procedure handled by the clerk of court in New Hanover County. Thus, Plaintiff made it clear at the hearing that the Motion does not target, and as a result the Court does not consider, Defendant's petition for partition.

Robinson, Judge.

## I.   INTRODUCTION

2.   This litigation involves counterclaims by Defendant arising out of her romantic relationship with Plaintiff and an alleged exchange of promises and services predicated on Defendant's expectation that the two would live together and remain in a relationship indefinitely.   Plaintiff and Defendant carried on a romantic relationship for approximately ten years, which ended in 2016.   Plaintiff initially brought suit against Defendant for Defendant's failure to pay her portion of a house that Plaintiff purchased in Wilmington, North Carolina.   Thereafter, Defendant brought counterclaims against Plaintiff alleging, *inter alia*, breach of contract, *quantum meruit*, unjust enrichment, and misrepresentation all as a result of the parties' relationship fallout.

## II.   FACTUAL BACKGROUND

3.   The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

4.   Plaintiff and Defendant are both citizens and residents of New Hanover County, North Carolina.  (Countercl. ¶¶ 1−2.)  Plaintiff and Defendant were involved in a romantic relationship for almost ten years but were never married.  (Countercl. ¶ 3.)

5.   In or around 2006, Plaintiff and Defendant met and became acquaintances. (Countercl. ¶ 7.) Shortly thereafter, the parties began a dating relationship and in

2008, Plaintiff asked Defendant to move into his home in Spring Valley, New York. (Countercl. ¶¶ 7, 10.)

6.      Around 2009, Defendant lost her job. (Countercl. ¶ 11.) In 2011, Defendant was offered a new job in Albany, New York. (Countercl. ¶ 14.) The parties were still living together at this time in Spring Valley. (Countercl. ¶ 14.) As a result, Defendant commuted to Albany for work. (Countercl. ¶ 14.)

7.      At some point after Defendant started working in Albany, Plaintiff purchased an apartment in Albany (the "Albany Apartment") where Defendant resided. (Countercl. ¶ 14.) Defendant "maintained" the Albany Apartment for Plaintiff. (Countercl. ¶ 14.) Defendant also paid rent to Plaintiff for the Albany Apartment and paid the utility bills. (Countercl. ¶ 14.) On the weekends, Defendant would travel to Spring Valley to be with Plaintiff. (Countercl. ¶ 15.)

8.      At all times since they first began dating, the parties held themselves out as a couple. (Countercl. ¶ 8.) When Defendant would travel to Spring Valley to be with Plaintiff, she would perform "relationship duties" which included "doing his laundry, cooking lunch and dinner, cleaning the house, taking care of some of his hygienic needs, engaging in a sexual relationship with him, taking him to doctor's appointments, and handing all of his medical problems." (Countercl. ¶ 15.) Defendant would also often grocery shop for Plaintiff and for herself, but Plaintiff would reimburse Defendant for his share of the groceries. (Countercl. ¶ 13.) Defendant also put Plaintiff on her health insurance pursuant to his request. (Countercl. ¶ 12.) Plaintiff never reimbursed Defendant for the cost of his health

insurance. (Countercl. ¶ 12.) During this time and throughout her relationship with Plaintiff, Defendant maintained all of her own expenses, which Defendant alleges led her to fall deeper into debt. (Countercl. ¶ 9.)

9. In or around 2015, Plaintiff indicated he wanted to relocate to North Carolina. (Countercl. ¶ 16.) Plaintiff told Defendant that he was going to sell his home in Spring Valley and that Defendant could "pick a home that she liked, wherever she wanted" in North Carolina. (Countercl. ¶ 16.) Defendant wanted to move near Duke Hospital, but "[t]his ultimately proved not to be an option." (Countercl. ¶ 16.) As a result, the parties decided to look for a home in Wilmington, North Carolina. (Countercl. ¶ 16.) The parties travelled to Wilmington and Plaintiff ultimately purchased a home located at 4402 Tollington Drive, Wilmington, North Carolina (the "Tollington Property"). (Countercl. ¶ 17.)

10. Shortly after purchasing the Tollington Property, Plaintiff told Defendant to start packing their belongings for the move to North Carolina. (Countercl. ¶ 18.) Defendant packed all of the parties' belongings, travelled to Wilmington to meet with movers and put together the parties' furniture, and began to unpack and arrange the home. (Countercl. ¶18.) Defendant did all this without Plaintiff's assistance and while taking time off from work without pay. (Countercl. ¶ 18.)

11. "Throughout this entire time period from 2015 through the purchase of the Tollington [P]roperty," Plaintiff continually represented to Defendant that "she would not have to work and that she could live with him forever." (Countercl. ¶ 19.) Plaintiff

also told Defendant that he would leave her money in his will and that the Tollington Property "would be hers[.]" (Countercl. ¶ 19.)

12. Prior to entering into her relationship with Plaintiff, Defendant was the owner of real property at 5097 Edinboro Lane, Wilmington, North Carolina ("Edinboro Property"). (Countercl. ¶ 6.) After the parties' decision to move to Wilmington, Plaintiff represented to Defendant that she would be able to sell the Edinboro Property and use the net proceeds from the sale to pay off her debt and that "she could do whatever she wanted with any leftover equity." (Countercl. ¶ 19.) Shortly after the move to Wilmington, Defendant quit her job and "began making efforts to list the [Edinboro Property] for sale." (Countercl. ¶ 21.)

13. Thereafter, in July 2016, Plaintiff "abruptly, and without warning," ended his relationship with Defendant and told her that she was to vacate the Tollington Property. (Countercl. ¶ 22.)

### III. PROCEDURAL BACKGROUND

14. The Court sets forth only that procedural background relevant to the Motion.

15. Plaintiff initiated this action by filing his Complaint on January 23, 2017, (ECF No. 5), and later amended his Complaint as of right on February 17, 2017, (First Am. Compl., ECF No. 9 ["Am. Compl."]). The Amended Complaint asserts claims against Defendant for breach of contract, restitution (in the alternative), declaratory judgment (in the alternative), conversion, common law trespass to chattels,

intentional infliction of emotional distress, and intrusion upon seclusion. (*See* Am. Compl. 6–14.)

16. Defendant filed her Answer and Affirmative Defenses ("Answer") on April 4, 2017. (ECF No. 19.) Over six months later, on October 26, 2017, Defendant moved to amend her Answer to add an additional affirmative defense and to assert counterclaims (the "Motion to Amend"). (*See* ECF No. 25.)

17. Nearly six months passed without Defendant calendaring the Motion to Amend for a hearing. (*See* ECF No. 34.) Eventually on April 17, 2018, Plaintiff noticed Defendant's Motion to Amend for a hearing along with two of his own motions. (ECF No. 39.)

18. Following a hearing on May 10, 2018 before the Honorable Jay D. Hockenberry, Senior Resident Superior Court Judge, Judge Hockenberry entered an order on July 12, 2018 granting the Motion to Amend (the "Order"). (Order (Def. Mot. to Am. Answer to Assert Countercl.) 2–3, ECF No. 45 ["Order"].) The Order stated that "Defendant is allowed to file her amended pleading within five (5) days of the entry of this Order." (Order 2.)

19. On August 21, 2018, forty (40) days after entry of the Order, and more than a month after the expiration of the period permitted by the Order to do so, Defendant filed her Amended Affirmative Defenses, Answer and Counterclaims (the "Amended Pleading"). (ECF No. 47.) Therein, Defendant added equitable estoppel as her third affirmative defense and asserted counterclaims for breach of express contract, breach of implied contract for personal services, *quantum meruit*, unjust enrichment,

constructive and resulting trust, breach of partnership, equitable estoppel, and misrepresentation. (*See* Countercl. 8–12.) Defendant also included a petition for partition.[2] (*See* Countercl. ¶¶ 54–61.)

20. As a result of the filing by Defendant of her counterclaim for breach of partnership, on August 31, 2018, Plaintiff filed a notice of designation of this action as a mandatory complex business case under N.C. Gen. Stat. § 7A-45.4(a). (ECF No. 48 ["Notice"].) This action was designated by order of Chief Justice Mark Martin of the Supreme Court of North Carolina on September 4, 2018, (ECF No. 1), and assigned to the undersigned by order of Chief Business Court Judge Louis A. Bledsoe, III that same day, (ECF No. 2).

21. Plaintiff filed the Motion on September 24, 2018. The Motion has been fully briefed, and the Court held a hearing on the Motion on October 30, 2018 at which both parties were represented by counsel.

22. The Motion is ripe for determination.

## IV. LEGAL STANDARD

23. In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations of the Amended Pleading in the light most favorable to Defendant. The Court's inquiry is "whether, as a matter of law, the allegations of the [Amended Pleading] . . . are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The

---

[2] As discussed in note 1, *supra*, Defendant's petition for partition is not a target of Plaintiff's Motion.

Court accepts all well-pleaded factual allegations in the relevant pleading as true. *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018).

24. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [Amended Pleading] on its face reveals that no law supports [Defendant's counterclaim]; (2) the [Amended Pleading] on its face reveals the absence of facts sufficient to make a good [counter]claim; or (3) the [Amended Pleading] discloses some fact that necessarily defeats [Defendant's counterclaim].'" *See Corwin v. British Am. Tobacco PLC*, No. 56PA17, 2018 N.C. LEXIS 1035, at *18–19 (N.C. Dec. 7, 2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558, S.E.2d 490, 494 (2002)). This standard of review for motions brought under Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of [pleadings] in the context of complex commercial litigation." *Id.* at *19 n.7.

25. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## V. ANALYSIS

26. Plaintiff seeks dismissal of the Amended Pleading on two grounds: first, Plaintiff seeks dismissal of Defendant's counterclaims pursuant to Rule 12(b)(6) for

failure to state any counterclaim upon which relief can be granted; and second Plaintiff seeks dismissal of the Amended Pleading in its entirety because it was not filed "by leave of court" pursuant to Rule 15(a). (Mot. 1.) The Court addresses Plaintiff's procedural argument regarding Rule 15(a) first and then addresses the substantive allegations regarding the counterclaims pursuant to Rule 12(b)(6).

## A. Dismissal for Failure to Comply with Rule 15(a)

27. Plaintiff argues that Defendant failed to file the Amended Pleading in compliance with the Order and has therefore failed to comply with Rule 15(a), making dismissal of the Amended Pleading appropriate. (Pl. Br. Supp. Mot. Dismiss Def. Countercl. 5, ECF No. 53 ["Br. Supp. Mot."].) Plaintiff argues that because Defendant obtained leave to file the Amended Pleading for a period of five (5) days, once that period expired, she no longer had leave and therefore the "pleading was filed without any permissible basis under Rule 15(a)." (Br. Supp. Mot. 5–6.) In her brief in response to the Motion ("Opposition Brief"), Defendant concedes that the Amended Pleading was untimely, but argues that because Plaintiff "used and relied solely on the [Amended Pleading] to file his Notice . . . Plaintiff has clearly waived and is estopped from any objection to the [A]mended [P]leading in that he is wholly relying on it to have this case moved to [the] [B]usiness [C]ourt." (Def. Reply Br. Pl. Br. Supp. Mot. Dismiss Def. Countercl. 6–7, ECF No. 58 ["Opp'n Br."].)

28. The Court finds no merit in Defendant's waiver argument. Plaintiff has a statutory right to have this matter designated to the Business Court. *See* N.C. Gen.

Stat. § 7A-45.4. By doing so, Plaintiff does not waive any right to dispute the validity of those counterclaims pursuant to Rule 12(b)(6) or otherwise.

29. Rather, the Court must consider whether Rule 15(a) permits the Court to strike or dismiss an amended pleading that fails to abide by its requirements. Rule 15(a) provides that, after a responsive pleading has been served, a party may amend his or her pleading "only by leave of court or by written consent of the adverse party . . . ." N.C. Gen. Stat. § 1A-1, Rule 15(a). Neither in its text nor the comments does Rule 15 vest the trial court with the authority to dismiss an amended pleading for failure to follow the Rule.

30. Plaintiff argues that, while he did not originally move pursuant to Rule 12(b)(1) or Rule 12(f), the Court could nonetheless use either rule to dismiss or strike the untimely Amended Pleading *sua sponte*. (Pl. Reply Br. Supp. Mot. Dismiss Def. Countercl. 8 n.2, ECF No. 59.) After reviewing the record, briefing, and the law on this matter, the Court believes that Rule 12(b)(1) is not the proper mechanism upon which to decide this issue.

31. With respect to Rule 12(f), this Rule provides that "the judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. Gen. Stat. § 1A-1, Rule 12(f). However, failure to timely file a pleading is not grounds for striking that pleading under Rule 12(f). *See Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008). Therefore, the Court declines to strike the Amended Pleading in its entirety pursuant to Rule 12(f). Accordingly, Defendant's Amended Pleading, which

sets forth her answer to the Amended Complaint, three affirmative defenses including a newly-added equitable estoppel affirmative defense, and the counterclaims, is not stricken from the record and the Motion is DENIED to the extent it seeks to strike or dismiss this Amended Pleading in its entirety.

32.     However, Rule 41(b) allows a court to dismiss counterclaims in a pleading for failing to comply with the Rules of Civil Procedure or any order of the court.  N.C. Gen. Stat. § 1A-1, Rule 41(b)−(c).  The language of Rule 41(b) embraces any type of court order and all the Rules of Civil Procedure.  *See In re Will of Parker*, 76 N.C. App. 594, 598, 334 S.E.2d 97, 100 (1985); *Jones v. Boyce,* 60 N.C. App. 585, 587−88, 299 S.E.2d 298, 300−01 (1983).  The authority given to a court to dismiss counterclaims under Rule 41(b) derives from the inherent power of the court to manage and control its proceedings.  *See Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674−75, 360 S.E.2d 772, 776 (1987).

33.     Here, dismissal of the counterclaims would be proper on two separate grounds under Rule 41(b): first, Defendant violated an order of the trial court by failing to timely file her Amended Pleading despite clear instruction in the Order on the deadline by which the Amended Pleading was to be filed.  Second, while Defendant originally had "leave of court" to file her Amended Pleading, that "leave of court" only extended through the window of time the Order permitted Defendant to file the Amended Pleading.  The Order "allowed [Defendant] to file her amended pleading within five (5) days of the entry of this Order[.]" (Order 2.)  Therefore, on the sixth day after the Order's entry, Defendant lacked "leave of court" to file her

Amended Pleading, and her subsequent filing forty (40) days after entry of the Order was improper. The record further indicates that Defendant did not have Plaintiff's consent to file the Amended Pleading. As a result, Defendant was in violation of Rule 15(a) when she filed the Amended Pleading. Accordingly, the counterclaims in the Amended Pleading are subject to dismissal pursuant to Rule 41(b).

34. The Court notes that Plaintiff did not move to dismiss the Amended Pleading pursuant to Rule 41(b); rather, Plaintiff moved to dismiss the Amended Pleading because it was "not filed 'by leave of court' pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure." (Mot. 1.) Although Rule 41(b) is mentioned in neither the Motion nor the briefing on the Motion, the Court nonetheless finds that dismissal of the counterclaims in the Amended Pleading pursuant to Rule 41(b) is proper in light of the Court of Appeals' decisions in *Jones v. Boyce* and *Plasman ex rel. Bolier & Co. v. Decca Furniture (USA), Inc.*, 811 S.E.2d 616 (N.C. Ct. App. 2018).

35. In *Jones*, the defendant in a professional malpractice action moved to dismiss the complaint based on the plaintiff's failure to comply with Rule 8(a)(2). 60 N.C. App. at 586, 299 S.E.2d at 300. The Court of Appeals affirmed dismissal of the action, reasoning that:

> Rule 8(a)(2) prescribes no penalty for violation of its proscription . . . . Absent application of the Rule 41(b) provision for dismissal for violation of the rules, litigants could ignore the proscription with impunity, thereby nullifying the express legislative purpose for its enactment. The General Assembly thus must have intended application of the Rule 41(b) power of dismissal as a permissible sanction for violation of the Rule 8(a)(2) proscription.

*Id.* at 587, 299 S.E.2d at 300.

36.     The Court of Appeals confronted a similar issue in *Plasman*. There, the Court of Appeals affirmed this Court's dismissal with prejudice of a second amended complaint for the plaintiffs' failure to comply with the requirements of Rule 8(a)(1). 811 S.E.2d at 625. The plaintiffs argued on appeal that the defendants "never moved for dismissal under Rule 41(b) . . . . Therefore, the trial court erred by dismissing the Second Amended Complaint without referencing Rule 41(b) and without a motion providing [the plaintiffs] with notice that they were subject to Rule 41(b) dismissal." *Id.* at 624 (internal quotation marks and brackets omitted). Referencing *Jones*, the Court of Appeals concluded that:

> *Jones* does not hold that specific reference to Rule 41(b) is required, only that Rule 41(b) serves as the vehicle for ordering sanctions for violations of Rule 8. In the present case, [the defendants] clearly indicated in their motion to dismiss . . . that they were seeking dismissal in part based upon violations of Rule 8. Therefore, [the plaintiffs] were put on notice that [the defendants] were seeking dismissal based on Rule 8 violations through the only means available – Rule 41(b).

*Id.* (citing *Patterson v. Sweatt*, 146 N.C. App. 351, 357, 553 S.E.2d 404, 409 (2001)).

37.     A similar analysis applies to Rule 15(a), "as it also 'does not identify a particular sanction that may be imposed' upon violation of its requirements." *Id.* (quoting *Patterson*, 146 N.C. App. at 357, 553 S.E.2d at 409). Therefore, Rule 41(b) is the proper mechanism for this Court to dismiss the counterclaims due to Defendant's failure to follow both the proscriptions of Rule 15(a) and the Order in filing her Amended Pleading. Moreover, like in *Plasman*, Defendant was fully on notice that Plaintiff sought dismissal of the Amended Pleading for violation of Rule 15(a) because it was a stated grounds for dismissal in both the Motion itself, (Mot. 1),

and the brief in support, (Br. Supp. Mot. 5−6). Additionally, Defendant briefed the very issue in her Opposition Brief. (Opp'n Br. 6−7.) As a result, the Court finds it appropriate to dismiss the counterclaims in the Amended Pleading pursuant to Rule 41(b) even though Plaintiff did not expressly move for dismissal pursuant to that Rule.

38. Having decided that dismissal of the counterclaims is appropriate pursuant to Rule 41(b), the Court must determine whether the dismissal on this basis should be with or without prejudice. Whether to dismiss an action with prejudice on these grounds is in the discretion of the trial court. *See Jones*, 60 N.C. App. at 586, 299 S.E.2d at 300 ("The grant of power to make the motion [to dismiss] implies discretionary power to allow it."). However, dismissal with prejudice "is not the only available sanction and should be imposed only where the trial court determines that less drastic sanctions are insufficient." *Patterson*, 146 N.C. App. at 357, 553 S.E.2d at 409; *see also Daniels*, 320 N.C. at 674, 360 S.E.2d at 776 ("Dismissal with prejudice [pursuant to Rule 41(b)] . . . is a harsh sanction."). "[T]he circumstances of each case must be carefully weighed so that the sanction properly takes into account the severity of the party's disobedience [with the Rules]." *Patterson*, 146 N.C. App. at 357, 553 S.E.2d at 409 (citation omitted); *see also Plasman*, 811 S.E.2d at 625 (holding that dismissal with prejudice was not an abuse of discretion where the plaintiffs were allowed to amend their complaint twice in conformity with Rule 8 and were given specific direction on how to cure the defects with the complaint, and nonetheless still violated Rule 8); *Schell v. Coleman*, 65 N.C. App. 91, 94, 308 S.E.2d 662, 664−65

(1984) (holding that the trial court should have dismissed the action with prejudice where the plaintiff "flagrant[ly]" violated Rule 8(a)(2) by failing to amend his complaint despite being permitted to do so, and "aggravat[ing]" the violation by informing others that a lawsuit existed in the amount of two million dollars for misappropriations and by causing adverse radio and newspaper publicity regarding the lawsuit).

39. Here, there are not repeated failures by Defendant to follow Rule 15(a); rather, Defendant followed Rule 15(a) first by seeking leave to amend her pleading and so obtained leave for a period of five (5) days. Defendant only violated Rule 15(a) and an order of the trial court when counsel for Defendant—knowing he missed the deadline to file the Amended Pleading—nonetheless decided to file the Amended Pleading without leave, noting at the October 30, 2018 hearing that he would "deal with the consequences" of the untimely filing as they came. While the Court believes this to be a flagrant violation of Rule 15(a), the Court also believes that counsel for Defendant did nothing further to aggravate the Rule violation as in *Schell*, nor engaged in repeated violations of the Rules as in *Plasman*. Therefore, the Court in its discretion concludes that dismissal of the counterclaims in the Amended Pleading pursuant to Rule 41(b) should be without prejudice. Nonetheless, because Plaintiff also moved for dismissal pursuant to Rule 12(b)(6), the Court additionally considers the substantive allegations of the counterclaims as set forth below and determines whether or not dismissal with prejudice of the counterclaims is appropriate for substantive reasons.

### B. Dismissal Pursuant to Rule 12(b)(6)

40. Defendant asserts eight counterclaims against Plaintiff: breach of express contract (Count I), (Countercl. ¶¶ 23−27); breach of implied covenant for personal services (Count II), (Countercl. ¶¶ 28−30); *quantum meruit* (Count III), (Countercl. ¶¶ 31−35); unjust enrichment (Count IV), (Countercl. ¶¶ 36−39); constructive and resulting trust (Count V), (Countercl. ¶¶ 40−41); breach of partnership (Count VI), (Countercl. ¶¶ 42−46); equitable estoppel (Count VII), (Countercl. ¶¶ 47−48); and misrepresentation (Count VIII), (Countercl. ¶¶ 49−53). The Motion argues that each of these counterclaims should be dismissed pursuant to Rule 12(b)(6). The Court analyzes the Motion, and Defendant's corresponding counterclaims, in the order largely argued by Plaintiff in his briefing.

### 1. Breach of Express Contract (Count I)

41. With respect to Defendant's breach of express contract counterclaim, Plaintiff argues that this counterclaim fails to allege the elements of a valid contract—assent, consideration, or definite terms—and therefore there was no binding, legal contract between the parties.[3] (Br. Supp. Mot. 6−10.) In response, Defendant argues that North Carolina recognizes express contracts between cohabiters and that public policy does not forbid cohabiters from entering into

---

[3] Plaintiff's arguments rest entirely on Defendant's failure to assert a valid contract. Therefore, the Court does not consider whether or not Defendant adequately alleged breach of that contract. However, the Court notes that Defendant, perhaps erroneously, failed to incorporate Paragraphs 19−22 of the counterclaims in her breach of express contract counterclaim. (Countercl. ¶ 23 ("The Defendant re-alleges and incorporates by reference Paragraphs 1 through 18 of [sic] as if set out in full.").)

contracts, so long as such contracts are not based solely upon illicit services. (Opp'n Br. 8–9.)

42. With respect to Plaintiff's arguments that the counterclaim is devoid of Plaintiff's assent to the parties' contract and the definite terms of that contract, the Court believes these arguments are more properly considered at a later stage of litigation where the Court has the benefit of a more fully developed record. The Court recognizes that North Carolina is a notice-pleading state. *See* N.C. Gen. Stat. § 1A-1, Rule 8(a). "Under this 'notice pleading' standard, 'a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable to adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case to be brought.'" *Tillery Envtl. LLC v. A&D Holdings Inc.*, 2018 NCBC LEXIS 13, at *78 (N.C. Super. Ct. Feb. 9, 2018) (quoting *Wake County v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). Defendant's breach of express contract counterclaim is only subject to the requirements of Rule 8(a). *See id.* at *77. Therefore, the Court believes that as long as Plaintiff is adequately on notice of the facts that underlie Defendant's breach of express contract counterclaim, that counterclaim should not be dismissed on that basis even if assent and the definite terms of the contract are not readily apparent from the face of the Amended Pleading. Here, Defendant alleges various promises that relate to an alleged contract to act as if Plaintiff and Defendant were married. (Countercl. ¶¶ 8, 15, 19, 24.) Accordingly, the Court finds that the Amended Pleading put Plaintiff on

notice generally of the type of contract that Defendant alleges existed between the parties.

43. Nonetheless, the Court considers whether or not the contract as alleged is recognized by North Carolina law. Defendant cites to two North Carolina cases that the Court finds instructive on the issue of whether or not Defendant has asserted a valid breach of contract counterclaim. (Opp'n Br. 9.) First, in *Collins v. Davis*, on an appeal from a directed verdict in favor of the defendant, our Court of Appeals concluded that contracts for the purchase or improvement of houses or for the loan and repayment of money are not invalid or unenforceable simply because the parties to the contract are engaging in extramarital relations. 68 N.C. App. 588, 592, 315 S.E.2d 759, 762, *aff'd*, 312 N.C. 324, 321 S.E.2d 892 (1984). Rather, so long as the contract was not based on "illicit intercourse" or "in exchange for [a party's] promise to continue the illicit relationship in the future," the contract could be enforced. *Id.* The *Collins* court concluded that because the plaintiff's evidence was susceptible to an interpretation that the parties' contract was based on other non-illegal consideration, the question was one of fact for the jury and therefore the trial court should not have dismissed the claim. *Id.*

44. Second, in *Suggs v. Norris*, the Court of Appeals took *Collins* one step further and expressly held that "agreements regarding the finances and property of an unmarried but cohabiting couple, whether express or implied, are enforceable as long as sexual services or promise thereof do not provide the consideration for such agreements." 88 N.C. App. 539, 542–43, 364 S.E.2d 159, 162 (1988). There, the

plaintiff worked for the defendant's produce business before the two entered into a relationship and began living together. *Id.* at 543, 364 S.E.2d at 162. The court found that there was "sufficient evidence for the jury to have inferred that [the] plaintiff's work comprised a business relationship with [the defendant] which was *separate and independent from and of their cohabiting relationship*[, and therefore] the jury may have inferred that sexual services did not provide the consideration for [the] plaintiff's claim." *Id.* (emphasis added).

45.     Both of these cases stand for the proposition that contracts between two people in a relationship can be enforced so long as illicit services do not provide consideration for that contract. The contracts involved in both *Collins* and *Suggs* related to activities *independent* from the parties' relationship: in *Collins*, the plaintiff's money was placed in the defendant's checking account to be used to purchase and pay for a piece of property that was titled in the defendant's name. *Collins*, 68 N.C. App. at 591, 315 S.E.2d at 761. The plaintiff gave the defendant her money based on an agreement that, if they got married, title would be in both their names, but if they did not marry, the property would be sold and plaintiff would be paid for his share of the proceeds. *Id.* In *Suggs*, the plaintiff sought compensation for her efforts in raising and harvesting produce for the defendant's produce business. *Suggs*, 88 N.C. App. at 541, 364 S.E.2d at 161. Therefore, in both cases, the allegations underlying the contract related to specific activities (the purchase of a home, the proceeds of a business) that the plaintiff sought to be compensated for that had nothing to do with the underlying romantic relationship.

46.    Here, however, Defendant affirmatively alleges that the parties "expressly formed a contract that obligated the parties to act as if they were married." (Countercl. ¶ 24.)  Thus, the contract, as alleged, goes to the very essence of the parties' personal relationship, unlike in *Collins* or *Suggs*.  Moreover, Defendant includes "engaging in a sexual relationship with [Plaintiff]" as one of the duties Defendant performed and that provided consideration for the promises allegedly made by Plaintiff.  (Countercl. ¶ 15.)  The inclusion of this allegation seems to go directly to the type of contract that is forbidden under both *Collins* and *Suggs*. Accordingly, the Court finds no basis under existing North Carolina law that allows Defendant to assert a breach of contract counterclaim based on the facts as alleged.[4]

47.    Defendant separately alleges in her breach of express contract counterclaim that "[d]uring the course of the parties' relationship, the Plaintiff has been able to acquire assets and property due to the efforts of both parties."  (Countercl. ¶ 26.) Defendant does not identify the property and assets in question, but does mention two pieces of property in other areas of the Amended Pleading: the Albany Apartment and the Tollington Property.    Liberally construing the allegations of the counterclaims in the Amended Pleading, however, the Court fails to find any support in the allegations that an express contract existed between the parties regarding

---

[4] The Court notes that courts in other jurisdictions have held that, where unmarried cohabiters have expressly agreed to share in or divide property accumulated during their cohabitation, that property must be divided in accordance with the agreement.  *See* Lloyd T. Kelso, *North Carolina Family Law Practice* § 1:6 (2017) (citing to several non-North Carolina cases).  However, Defendant has failed to cite to a single case indicating that North Carolina follows this approach, and the Court, on its own research, equally fails to find a case that supports recovery based on the allegations contained herein.

either of these properties.[5]   Therefore, considering that the only allegations of an express contract concern the obligation to continue the parties' relationship and to "act as if they were married[,]" the Court finds that Defendant's allegations are insufficient to support a counterclaim for breach of express contract based on existing North Carolina law.  Therefore, Defendant's breach of express contract counterclaim is DISMISSED.

### 2.     Breach of Implied Covenant for Personal Services and Quantum Meruit (Counts II & III)

48.     Defendant alleges breach of an implied covenant for personal services as a separate counterclaim from her *quantum meruit* counterclaim; both counterclaims, however, are based on Defendant's performance of services during the parties' ten-year relationship and cohabitation.  (*See* Countercl. ¶¶ 29−30, 32−34.)  "Recovery on *quantum meruit* must rest upon an implied [in law] contract."    *Thomas v. Thomas*, 102 N.C. App. 124, 125, 401 S.E.2d 396, 397 (1991) (citation omitted).  It does not appear to the Court that a claim for breach of an implied covenant for personal services is a separate, independent claim from one for *quantum meruit*, and the Defendant has not pointed the Court to any authority recognizing a distinct claim.

---

[5] Unlike in *Collins*, there are no allegations that Defendant paid Plaintiff money for either property with the expectation that she would get something in return.  With respect to the Albany Apartment, Defendant paid rent to Plaintiff in exchange for her being able to live in that property; Defendant does not allege, nor could the facts be inferred to indicate, that the parties agreed that Defendant would be reimbursed for her rental payments or would be entitled to any profit from the sale of the Albany Apartment.  With respect to the Tollington Property, there are no allegations that Defendant paid anything for the property.  While Defendant does allege that she moved the parties' belongings into the Tollington Property, she does not allege that she did this with the expectation of being paid back for her time or expense.

Therefore, the Court treats Counts II and III as a single claim for relief based upon the theory of *quantum meruit*.

49. To recover in *quantum meruit*, Defendant must show: (1) that she rendered services to Plaintiff; (2) that Plaintiff knowingly and voluntarily accepted the services; and (3) that Defendant did not gratuitously give the services. *See Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, 2018 NCBC LEXIS 7, at *29 (N.C. Super. Ct. Jan. 24, 2018). Additionally, "*quantum meruit* claims require a showing that both parties understood that services were rendered with the expectation of payment" *Id.* (quoting *Wing v. Town of Landis*, 165 N.C. App. 691, 693, 599 S.E.2d 431, 433 (2004)). "This does not mean that [Defendant] alone had an expectation of compensation, but that [Plaintiff] understood that [he] was expected to compensate [her] for the services." *Id.* Plaintiff argues that Defendant's counterclaim is deficient for two reasons: first, Defendant's allegations indicate that the parties "were engaged in a typical romantic relationship where no such expectation of compensation is held[,]" and second, there are no allegations indicating that Plaintiff knew Defendant expected to be compensated at the time she rendered the services. (Br. Supp. Mot. 10−11.)

50. Defendant alleges numerous services that she rendered to Plaintiff, "which included doing Plaintiff's laundry, cooking him lunch and dinner, cleaning the house, taking care of some of his hygienic needs, engaging in a sexual relationship with him, taking him to doctor's appointments, and handling all of his medical problems." (Countercl. ¶ 15.) Defendant expressly refers to these services as "relationship

duties[.]" (Countercl. ¶ 15.) Defendant further alleges that the parties had an understanding that "Defendant's services were not performed gratuitously[,]" and that "there was a mutual understanding that Defendant was to be compensated for her efforts." (Countercl. ¶ 34.)

51.     Despite this conclusory allegation that the services were not performed gratuitously, there are no factual allegations that indicate Plaintiff accepted these services knowing he would need to give Defendant something in return for them; in fact, Defendant's description of these services as "relationship duties" defeats the conclusion that they were not performed gratuitously. *See, e.g., Francis v. Francis*, 223 N.C. 401, 402, 26 S.E.2d 907, 908 (1943) ("[W]here certain family relationships exist, services performed by one member of the family for another, within the unity of the family, are presumed to have been rendered in obedience to a moral obligation and without expectation of compensation." (citations omitted)).[6]  This Court is not required to accept Defendant's conclusory claim that these services were not gratuitous in the absence of any factual allegations to support such a conclusion. *See Regency*, 2018 NCBC LEXIS 7, at *20.  Moreover, Defendant alleges that one of her services involved "engaging in a sexual relationship" with Plaintiff, which is not legal consideration.   This service simply cannot support a counterclaim for *quantum meruit.*  Moreover, under *Suggs*, if sexual services are alleged as consideration, the contract, either express or implied, is invalid.  *See Suggs*, 88 N.C. App. at 542−43,

---

[6] The Court believes that dismissal of Defendant's *quantum meruit* counterclaim is warranted under *Francis v. Francis*.  However, the Court need not, and therefore does not, dismiss this counterclaim on that basis.

364 S.E.2d at 162. Accordingly, the Court DISMISSES Counts II and III to the extent they are based on Plaintiff's "relationship duties."

52. Defendant separately alleges that she "packed all of the parties' belongings[,] . . . [and] travelled to Wilmington prior to moving in order to meet with movers, arrange the house, put together the parties' furniture, and begin to unpack." (Countercl. ¶ 18.) Even though these allegations are pled separately from Defendant's "relationship duties[,]" there are still no factual allegations in the Amended Pleading that Plaintiff knew Defendant was not moving the parties' belongings gratuitously and that she expected payment or other compensation *at that time* for her efforts. Thus, the Court finds that Defendant has failed to sufficiently allege a *quantum meruit* counterclaim. Accordingly, these counterclaims are DISMISSED.

### 3. Unjust Enrichment (Count IV)

53. Defendant asserts an unjust enrichment counterclaim based on the same factual allegations that support her *quantum meruit* counterclaim. (Countercl. ¶¶ 36−39.) Plaintiff argues that, like Defendant's *quantum meruit* counterclaim, her unjust enrichment counterclaim fails because any benefit she conferred upon Plaintiff was gratuitous. (Br. Supp. Mot. 11.)

54. "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins*, 68 N.C. App. at 591, 315 S.E.2d at 761. To recover in North

Carolina on a claim for unjust enrichment, Defendant must prove that (1) she conferred a benefit on Plaintiff; (2) Plaintiff consciously accepted the benefit; and (3) that she did not confer the benefit gratuitously. *See Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*, 2018 NCBC LEXIS 2, at \*37 (N.C. Super. Ct. Jan. 2, 2018) (citing *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002)).

55.     For the same reasons as expressed above regarding Defendant's *quantum meruit* counterclaim, the Court finds that the allegations are insufficient to show that Plaintiff understood Defendant's actions to have been given non-gratuitously.[7] Accordingly, the Court DISMISSES Defendant's unjust enrichment counterclaim.

### 4.     Breach of Partnership (Count VI)

56.     Defendant alleges in her Sixth counterclaim that "[d]uring the course of the parties' relationship, they clearly formed an equal partnership both assuming equally responsible roles which included maintaining a household," (Countercl. ¶ 43), and that "[t]he parties acted as partners throughout the entire course of their relationship and clearly had a partnership agreement[,]" (Countercl. ¶ 44).  Plaintiff argues that Defendant fails to plead any of the statutory elements of a partnership and instead "seeks to extend the law of partnership to cover romantic relationships and the exchanges that occur within the bounds of those relationships."  (Br. Supp. Mot. 12−13.)

---

[7] As with Defendant's *quantum meruit* counterclaim, the Court believes that dismissal of Defendant's unjust enrichment counterclaim is warranted under *Francis v. Francis*. However, the Court need not, and therefore does not, dismiss this counterclaim on that basis.

57.    "A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59-36(a). A partnership can be created even in the absence of an express agreement, "and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inferences that the parties understood that they were partners and acted as such." *Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E.2d 243, 247 (1948); *see also Williams v. Biscuitville, Inc.*, 40 N.C. App. 405, 407, 253 S.E.2d 18, 19 (1979) ("A partnership agreement may be inferred without a written or oral contract if the conduct of the parties toward each other is such that an inference is justified." (citation omitted)). However, co-ownership of the business venture is an "indispensable requisite" to the formation of a partnership. *See McGurk v. Moore*, 234 N.C. 248, 252–53, 67 S.E.2d 53, 56 (1951) (holding that where the element of co-ownership of the business is lacking there can be no partnership).

58.    Here, Defendant fails to allege anywhere in the Amended Pleading that the parties participated in any business venture, let alone operated as co-owners of that business. The closest allegation in the Amended Pleading is that Plaintiff purchased the Albany Apartment and Defendant "maintained" it for Plaintiff, (Countercl. ¶ 14), but that allegation is insufficient, on its own, to imply that Plaintiff and Defendant purchased the property as a business. Moreover, Defendant pleads that she resided there and paid rent to Plaintiff, (Countercl. ¶ 14), indicating that Plaintiff and Defendant were not co-owners of this business, even if it could be inferred as one.

59.     Additionally, the Court on its own research[8] could find only one case in North Carolina that held a partnership existed between cohabiters who "conducted their daily lives as a partnership," but in that case, the plaintiff assisted in the defendant's business by paying for business expenses, and also participated in manual labor for both the defendant's business and personal projects, which included the purchase of thirteen different parcels of land. *Rhue v. Rhue*, 189 N.C. App. 299, 308−09, 658 S.E.2d 52, 60 (2008).   The facts in *Rhue* are clearly and easily distinguishable from the case *sub judice*, where there are no allegations indicating that the parties engaged in any sort of business or common venture for profit. Therefore, the Court finds that the allegations are insufficient to assert that a partnership existed between Plaintiff and Defendant.   Because Defendant fails to assert the elements minimally necessary to assert a valid breach of partnership counterclaim, this counterclaim is DISMISSED.

### 5.     Misrepresentation (Count VIII)

60.     Defendant's Eighth counterclaim is for misrepresentation, which Plaintiff argues should be dismissed because Defendant fails to plead with particularity the necessary elements of either negligent misrepresentation or fraudulent misrepresentation. (Br. Supp. Mot. 15−16.)

61.     Defendant fails to identify which type of misrepresentation—negligent or fraudulent—she alleges in the Amended Pleading.   Nonetheless, the Court believes that both "[a]llegations of fraud and negligent misrepresentation must be stated with

---

[8] Defendant failed to cite any case that held a partnership claim could be brought on facts similar to those alleged here.

particularity." *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *20 (N.C. Super. Ct. Jan. 28, 2015) (citations omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 9(b). In order to plead such claims with particularity, "one must allege (1) the time, place and content of the misrepresentation, (2) the identity of the person making the representation and (3) what was obtained as a result of the fraudulent acts or representations." *Deluca*, 2015 NCBC LEXIS 12, at *21 (internal quotation marks, brackets, and citation omitted). "Additionally, the representation must be definite and specific, more than 'mere puffing, guesses, or assertions of opinions' but actual representations of material facts." *Id.* (quoting *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992)).

62. Here, Defendant alleges that Plaintiff represented to Defendant that "he was going to take care of her and help her pay off her debt," (Countercl. ¶ 50), and "that she would be able to remain in the [Tollington Property] and that he would take care of her[,]" (Countercl. ¶ 51). However, in neither these paragraphs nor anywhere else in the Amended Pleading does Defendant state the particular time or place of these representations. Defendant's allegation in Paragraph 19 is the most specific, alleging that "from 2015 through the purchase of the Tollington [P]roperty," Plaintiff represented to Defendant that she could live with him forever and would not need to work. (Countercl. ¶ 19.) Nonetheless, Defendant still fails to plead the place where this alleged representation occurred, or any of the other alleged misrepresentations stated in Paragraphs 51 and 52. Therefore, the Court finds that Defendant has failed to plead her misrepresentation counterclaim with sufficient particularity as is

required by Rule 9(b) and accordingly concludes that this counterclaim should be DISMISSED.

63. Notwithstanding its conclusion that this claim should be dismissed, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013). The Court concludes, in the exercise of its discretion, that dismissal of Defendant's counterclaim for misrepresentation should be without prejudice to Defendant's right to attempt to reassert such claim through proper factual allegations and sufficient particularity by way of a motion to amend.

### 6. Constructive and Resulting Trust and Equitable Estoppel (Counts V & VII)

64. Defendant asserts constructive and resulting trust and equitable estoppel in the Amended Pleading as affirmative claims for relief. (Countercl. ¶¶ 40−41, 47−48.) Plaintiff argues in the Motion that parol trusts—constructive or resulting—are remedies rather than claims or causes of action and that similarly, equitable estoppel is not an independent affirmative claim for relief. (Br. Supp. Mot. 12−13.)

65. "A constructive trust is not a standalone claim for relief or cause of action." *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at \*14 (N.C. Super. Ct. Oct. 9, 2018) (citation omitted); *see also Roper v. Edwards*, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) ("On the whole . . . the constructive trust is seen by American courts today as a remedial device, to be used wherever specific restitution in equity is appropriate on the facts." (emphasis and citation omitted)); *Weatherford v. Keenan*, 128 N.C. App. 178, 179, 493 S.E.2d 812, 813 (1997)

("A constructive trust is merely a procedural device by which a court of equity may rectify certain wrongs. It is suggestive of a power which a court of equity may exercise in appropriate cases, but it is not a designation of the cause of action which justifies an exercise of the power." (citation omitted)). A resulting trust, like a constructive trust, is also created by operation of law and is therefore a remedy, not a standalone claim. *See Carcano v. JBSS, LLC*, 200 N.C. App. 162, 171, 684 S.E.2d 41, 49 (2009). Therefore, the Court DISMISSES Defendant's counterclaim for constructive and resulting trust for the reason that it cannot be asserted as an affirmative counterclaim.

66. Similarly, "North Carolina does not recognize equitable estoppel as an affirmative cause of action." *Regency*, 2018 NCBC LEXIS 7, at *16; *see also Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC*, 808 S.E.2d 576, 579 (N.C. Ct. App. 2017) ("Generally, equitable estoppel is not a cause of action and may not be used as a sword in a [pleading]."); *Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, 2012 NCBC LEXIS 52, at *38 (N.C. Super. Ct. Oct. 3, 2012) ("This Court is not aware of any North Carolina case in which equitable estoppel has been asserted as the basis for an independent affirmative claim for relief."). Defendant asserts equitable estoppel twice in her Amended Pleading: first, in her amended Answer as her third affirmative defense to the Amended Complaint, (Affirm. Defs. & Answer 1), and second, in her counterclaims as her Seventh counterclaim, (Countercl. ¶¶ 47−48). As discussed above,[9] the Court elects not to strike Defendant's affirmative

---

[9] *See supra* Paragraph 31.

defense of equitable estoppel on the grounds that the Amended Pleading was untimely. However, to the extent that Defendant asserts equitable estoppel as an affirmative claim for relief, the Court DISMISSES this counterclaim.

## VI. CONCLUSION

67. **THEREFORE**, for the reasons stated herein, the Court **ORDERS** as follows:

A. The Court **DENIES** the Motion to the extent it seeks to strike or dismiss the Amended Pleading in its entirety.

B. The Court **GRANTS** the Motion to dismiss pursuant to Rule 12(b)(6) as to Defendant's claims for breach of express contract (Count I), breach of implied covenant for personal services (Count II), *quantum meruit* (Count III), unjust enrichment (Count IV), constructive and resulting trust (Count V), breach of partnership (Count VI), and equitable estoppel (Count VII). These claims are all **DISMISSED with prejudice**. While Defendant's counterclaim for equitable estoppel is dismissed with prejudice as an affirmative claim for relief, Defendant is nonetheless free to assert it as an affirmative defense to Plaintiff's Amended Complaint, and Plaintiff has not waived any right to object to the substance of this affirmative defense at a later date.

C. The Court **DISMISSES without prejudice** Defendant's counterclaim for misrepresentation (Count VIII).

**SO ORDERED**, this the 28th day of January, 2019.


                                          /s/ Michael L. Robinson
                                        _____
                                        Michael L. Robinson
                                        Special Superior Court Judge
                                          for Complex Business Cases